# STATE OF CONNECTICUT *v.* KEVIN B. WILLIAMS
## (AC 22676)

Flynn, Mihalakos and McDonald, Js.

Argued May 7, 2003—officially released January 13, 2004

*Moira L. Buckley*, deputy assistant public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, state's attorney, and *Kevin Doyle*, assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Kevin B. Williams, appeals from the judgment of conviction, rendered after a jury trial, of the crimes of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A) and risk of injury to a child in violation of General Statutes § 53-21. The issues on appeal are whether (1)

remarks made by the prosecutor in his closing and rebuttal arguments to the jury amounted to misconduct that deprived the defendant of a fair trial, (2) the court's instructions to the jury to ignore certain questions that defense counsel had asked the victim deprived the defendant of his rights to confrontation, to present a defense and to have a jury decide his fate, and (3) the court committed harmful error by precluding the defendant from cross-examining the victim's mother concerning the effect of the victim's parents' divorce. We conclude that the defendant's claims are without merit. We therefore affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On or about July 12, 1999, in the early evening, the defendant, a forty-four year old man, baby-sat for the female victim, who was an eight year old child,[1] and another child. During that time, the children and the defendant played hide-and-seek. Both children hid and were discovered by the defendant in a bedroom. After being found, the victim's friend ran down a flight of stairs, and the defendant entered the bedroom and shut the door. The defendant picked up the victim and put her on the bed. She asked the defendant to get off of her and tried to get off of the bed. The defendant touched the victim's chest, over her clothing. She testified that she heard the defendant make muttering noises she had never heard and that he shivered when he touched her chest. When the defendant heard the victim's mother return, he got off of her and went downstairs. A friend of the victim's mother saw the defendant and the victim walk down the stairs. Although the victim informed her mother's friend about the incident, her mother's friend did not believe her initially. Later that

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom her identity may be ascertained. See General Statutes § 54-86e.

evening, the victim told her mother that the defendant had touched her inappropriately, and her mother took her to the police station. The police arrested the defendant and seized the trousers he wore on July 12, 1999. The trousers tested negative for any bodily fluids.

The defendant's trial began on October 2, 2001, and the jury returned a verdict of guilty on the two counts on October 5, 2001. On December 7, 2001, the court sentenced the defendant to a term of two and one-half years imprisonment on the count of sexual assault in the third degree and three and one-half years imprisonment on the count of risk of injury to a child, to be served consecutively, followed by six and one-half years of special parole and an obligation to register as a sex offender. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that certain statements made by the prosecutor in his closing and rebuttal arguments to the jury deprived the defendant of a fair trial. The defendant argues that several remarks were improper because the prosecutor (1) vouched for the victim's credibility and attacked the defendant's credibility, (2) appealed to the jurors' emotions, (3) referred to facts not in evidence and (4) belittled defense counsel and her role as defense counsel. We disagree.

The defendant did not preserve the issue for appeal and therefore seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] We review

---

[2] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

the claim because the record is adequate to do so, and an allegation of prosecutorial misconduct in violation of the defendant's fundamental right to a fair trial is a claim of constitutional magnitude. See *State* v. *L'Minggio*, 71 Conn. App. 656, 675, 803 A.2d 408, cert. denied, 262 Conn. 902, 810 A.2d 270 (2002). We conclude, however, that the defendant's claim fails under *Golding*'s third prong because the challenged remarks did not deprive him of a fair trial.

Our standard of review concerning claims of prosecutorial misconduct is well settled. "Our Supreme Court has previously acknowledged that prosecutorial misconduct can occur in the course of closing argument. . . . [T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . .

"Our first step in analyzing the defendant's claim that the prosecutor committed misconduct during closing argument is to determine whether the challenged comments were improper. . . . We previously have observed that because closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . .

"Nevertheless, [w]hile a prosecutor may argue the state's case forcefully, such argument must be fair and

based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Citations omitted; internal quotation marks omitted.) *State* v. *Young*, 76 Conn. App. 392, 403–404, 819 A.2d 884, cert. denied, 264 Conn. 912, 826 A.2d 1157 (2003).

"We do not scrutinize each individual comment in a vacuum, but rather we must review the comments complained of in the context of the entire trial. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Internal quotation marks omitted.) *State* v. *Rogelstad*, 73 Conn. App. 17, 27, 806 A.2d 1089 (2002). "In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court . . . has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Sostre*, 73 Conn. App. 848, 852–53, 809 A.2d 1141 (2002), cert. denied, 262 Conn. 942, 815 A.2d 673 (2003).

"We have long held, however, that *Golding* review of such a claim will not result in reversal where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial . . . because in such a case the claimed misconduct is insufficient to infect the fundamental fairness of the trial itself." (Internal quotation marks omitted.) Id., 853. Again, it is important to note that the defendant made no objections and failed to ask for any curative instruction with regard to his prosecutorial misconduct claims. "The defendant, therefore, presum-

ably did not regard those remarks . . . as seriously prejudicial at trial." (Internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 356, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999).

## A

The defendant first asserts that the prosecutor vouched for the credibility of the victim, and asked the jury to speculate as to the truthfulness of the victim, her testimony and her lack of a motive to lie. The defendant challenges, among other remarks, the following statements made by the prosecutor: "You have to . . . weigh the evidence, look at the way people testified, size up their testimony . . . . You use your good common sense to . . . decide if [the victim] had a reason to be untruthful. If she was confused, why would she come in court and testify to the things that she did? . . . Who are you going to believe, ladies and gentleman? . . . What was the motive for [the victim] to say that this happened when it didn't? What was the enjoyment that she got out of being involved in this process? What did she have to gain by saying this happened? . . . You have to decide if she's credible, if she's believable." The prosecutor also stated: "Use your good common sense. The shivering when it wasn't cold out, the strange noises. How did an eight year old know about that?" and, "[The victim] was truthful. She was direct. She answered difficult questions and never backed off—never backed off what the defendant did to her." We disagree with the defendant's claim that those remarks deprived him of a fair trial.

"In deciding cases . . . [j]urors are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion. . . . Therefore, it is *entirely proper for counsel to appeal to a jury's common sense*

*in closing remarks.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Ceballos*, 266 Conn. 364, 402, 832 A.2d 14 (2003). The defendant's argument that the victim could not withdraw her complaint for fear of what could happen to her, of which there was no evidence, invited comment on the victim's credibility as to lack of motive. Also, defense counsel did not object to those remarks, which were not frequent or severe and did not infringe on the jury's fact-finding function. See *State* v. *Thompson*, 266 Conn. 440, 477–78, 832 A.2d 626 (2003).

"It is well settled that, in addressing the jury, [c]ounsel must be allowed a generous latitude in argument . . . . The parameters of the term zealous advocacy are also well settled. The prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Citations omitted; internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 712–13, 793 A.2d 226 (2002). "[I]t does not follow . . . that every use of rhetorical language or device is improper. . . . The occasional use of rhetorical devices is simply fair argument." (Internal quotation marks omitted.) Id., 712.

Furthermore, this court realizes that the credibility of the witnesses was central to the case. "[The jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's]

exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Colon*, 71 Conn. App. 217, 224–25, 800 A.2d 1268, cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002).

Although we agree with the defendant that several of the comments made by the prosecutor were improper, we disagree that those improprieties deprived the defendant of his constitutional right to a fair trial. We recognize that the prosecutor's statements in this case are similar to remarks made in *State* v. *Alexander*, 254 Conn. 290, 304–305, 755 A.2d 868 (2002). See footnote 3. We are mindful that the *Alexander* court found these types of statements improper, and we have, therefore, done the same. In this case, however, the prosecutor's comments were invited by defense counsel's closing remarks and were isolated, a curative instruction was given and the prosecutor's comments were not pervasive. Cf. id., 308. Therefore, unlike the situation in *Alexander*, we cannot find that the prosecutor's remarks amounted to a violation of the defendant's due process rights. Cf. id. The defendant, moreover, did not ask this court to invoke its supervisory authority. See *State* v. *Reynolds*, 264 Conn. 1, 165, 836 A.2d 224 (2003). Even if he had, the prosecutor's statements were not "so offensive to the sound administration of justice" or "so egregious"; (internal quotation marks omitted) id.; as to implicate the defendant's due process right to a fair trial. The court, furthermore, charged the jury that it could not go outside of the evidence to find facts, that arguments by counsel were not to be considered as evidence and that the jury was charged with the duty to assess the credibility of the witnesses. See *State* v. *Rivera*, 61 Conn. App. 763, 772–73, 765 A.2d 1240, cert. denied, 256 Conn. 901, 772 A.2d 599 (2001). There is no indication that the jury did not follow the court's instructions. See id., 773.

In addition, defense counsel did not object to the comments when they were made, suggesting that she did not view the comments to be seriously prejudicial at the time. *State* v. *Reynolds*, supra, 264 Conn. 206. "Inasmuch as defense counsel had heard the comments of the [prosecutor] when they were made, defense counsel was in a position to assess what impact, if any, the comments may have had on the jury and to determine what remedy to seek." Id., 207. Although we do not excuse the impropriety that inheres in such comments, "they represent the kind of lapse that sometimes occurs, without premeditation, in the heat of the moment and at the close of an emotional trial. Thus, isolated comments of this type generally do not give rise to a due process violation or otherwise result in manifest injustice because a properly instructed jury is likely to appreciate fully its duty to decide the case on the evidence and not on the basis of such rhetoric." Id., 205.

Because of the isolated nature of the remarks and the failure to make timely objections, we are not persuaded that the comments were likely to have prejudiced the defendant. The defendant has failed to carry his burden of demonstrating that he clearly was deprived of his fundamental constitutional right to a fair trial.

B

The defendant next asserts that the prosecutor appealed to the jurors' emotions, passions or prejudices. The defendant challenges, among other remarks, the following statements made by the prosecutor: "[Y]ou have the testimony of [the victim], and you sat and listened to all the questions that she went through." "Counsel would have you believe that [the victim] is untruthful and therefore this didn't happen. Good common sense. Children at the age of eight and ten—what are they untruthful about? They want to make themselves look better? How does this make her look better.

How is she having fun in this process?" "Do you think she was having fun [talking to others about her claim]? It was fun for her to talk about whether she was flat chested, when she had her first [menstrual] period? She's not doing this for attention," and, "Focus on the evidence, and there's nothing in the evidence that would explain why an eight year old girl would go through this if it didn't happen." We disagree with the defendant's claim that those remarks deprived him of a fair trial.

"An appeal to emotions, passions, or prejudices improperly diverts the jury's attention away from the facts and makes it more difficult for it to decide the case on the evidence in the record. . . . An appeal to the emotions of the jury may arise from the use of personal and degrading epithets to describe the defendant. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Citations omitted; internal quotation marks omitted.) *State* v. *Alexander*, supra, 254 Conn. 307. "Therefore, a prosecutor may argue the state's case forcefully, [but] such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Singh*, supra, 259 Conn. 719.

Although we agree with the defendant that several of the comments made by the prosecutor were improper, we disagree that those improprieties deprived the defendant of his constitutional right to a fair trial. Whether the defendant was deprived of his constitutional rights "depends, in part, on whether defense counsel has made a timely objection to any of the prosecutor's improper remarks. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the

alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." *State* v. *Reynolds*, supra, 264 Conn. 165; see also *State* v. *Thompson*, supra, 266 Conn. 479.

In this case, the prosecutor's comments were isolated comments made during closing and rebuttal arguments, the court instructed the jury that it "must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy," and the prosecutor's statements were not severe. Further, the prosecutor's comments regarding why the victim would "go through this" was in direct response to defense counsel's closing argument questioning the victim's credibility. We realize that some latitude must be allowed for the zeal of counsel in the heat of argument.

We are not persuaded that the comments were likely to have prejudiced the defendant. The defendant has failed to carry his burden of demonstrating that he clearly was deprived of his fundamental constitutional right to a fair trial.

C

The defendant next argues that the prosecutor referred to facts not in evidence. The defendant challenges the following statements made by the prosecutor: "Use your good common sense. The shivering when it wasn't cold out, the strange noises. How did an eight year old know about that? How did she remember that because that was unique," and, "You heard about the pants. When did the police get the pants? They didn't get the pants until about four in the morning, and remember what the defendant's life mate told you . . . . He wasn't in the same clothes when the police came. We don't know what was done in the time frame . . . to those pants or anything that he was wearing underneath the pants. The state doesn't have to offer physical proof." The defendant also challenges the comment

made by the prosecutor that the victim had told "people in my office" about her claim against the defendant and that the prosecutor misspoke by stating that the defendant had testified as to a statement when the defendant had not testified at all during the trial. We disagree with the defendant's claim that those remarks deprived him of a fair trial.

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . [A] lawyer shall not . . . [a]ssert his personal knowledge of the facts in issue, except when testifying as a witness. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument. . . . Our case law reflects the expectation that jurors will not only weigh conflicting evidence and resolve issues of credibility as they resolve factual issues, but also that they will consider evidence on the basis of their common sense. Jurors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citation omitted; internal quotation marks omitted.) *State* v. *Rogelstad*, supra, 73 Conn. App. 29–30; see *State* v. *Singh*, supra, 259 Conn. 717; *State* v. *Chasse*, supra, 51 Conn. App. 359. "A prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evidence." *State* v. *Singh*, supra, 718.

"If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation. . . . We again note that [i]n addressing the jury, [c]ounsel must be allowed a generous latitude

in argument . . . and something must be allowed for the zeal of counsel in the heat of argument." (Citation omitted; internal quotation marks omitted.) *State* v. *Chasse*, supra, 51 Conn. App. 360.

We first note that the defendant's reliance on *State* v. *Alexander*, supra, 254 Conn. 305–306, is misplaced. In *Alexander*, the prosecutor made outrageous statements regarding children's thought processes and their ability to make up stories without providing *any* evidence to support her assertions.[3] In this case, however, the prosecutor confined his closing argument to evidence presented during trial and reasonable inferences that could be drawn from the evidence presented. He referred to the victim's testimony and made the reasonable inference that such an incident would stand out in the victim's mind as unique.

[3] The prosecutor in *Alexander* stated in relevant part: "The same disparity is found in almost every child sexual abuse case. The defendant is typically bigger, stronger, more experienced, better at verbal skills, and holds all the power in the relationship. The child, the victim, is small, weak, naive, inarticulate, and powerless. And must convince you people that her body has been violated. . . . You've probably all heard the saying 'wisdom comes from the mouths of babes.' Well, there's a reason for that saying. Just because we have a twelve year old victim, who was eight at the time the incident occurred, recalling what happened to her when she was eight and nine in front of a room full of strangers, doesn't mean we can't depend on her word. Because we should depend on her word. And, why? I'll tell you why. Common sense tells you that no one—no one would put herself through such an ordeal if nothing happened. . . . [The victim] knew when she came to court she had to tell the truth. *And that's what she did. . . . That's how little kids think. They can't make this up.* . . . Nor did she exaggerate. Nor did she have any motive to lie. . . . There's no motive for her to lie. . . . [Y]ou're supposed to believe that as a result of that comment [the victim] fabricated this whole incident to get back at him. *I don't know of that many eight or nine year olds that are that sophisticated to fabricate a story involving sexual abuse.* . . . Now, what else could they say? That she fantasized this, made this all up in her head? . . . But, I know that you don't think that way. Because I know that your common sense tells you that eight year old children don't fantasize about that." (Emphasis in original.) *State* v. *Alexander*, supra, 254 Conn. 300–301.

Next, we agree with the defendant that the remark concerning the defendant's pants was improper. Again, however, we disagree that the impropriety deprived the defendant of his constitutional right to a fair trial. Whether the defendant was deprived of his constitutional rights "depends, in part, on whether defense counsel has made a timely objection to any of the prosecutor's improper remarks. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." *State* v. *Reynolds*, supra, 264 Conn. 165.

In this case, the prosecutor's comment was an isolated comment made during rebuttal argument, the comment was invited by defense counsel, the court instructed the jury not to go outside of the evidence to find facts and that counsels' arguments were not considered evidence, and the prosecutor's statement was not severe.

Finally, the prosecutor referred to the victim's testimony regarding her recollection of the incident and her conversation with the people from the state's attorney's office. Although the prosecutor misspoke concerning the defendant's testimony, when the isolated comment is read in context, it is clear that the jury reasonably would understand to what the prosecutor was referring. As we have stated, in the excitement of trial, even the most experienced counsel occasionally is carried away.

We are not persuaded that the comments were likely to have prejudiced the defendant. The defendant has failed to carry his burden of demonstrating that he was clearly deprived of his fundamental constitutional right to a fair trial.

### D

The defendant's final assertion is that the prosecutor attacked the integrity and institutional role of defense

counsel by belittling the defense attorney. The defendant challenges the following statements made by the prosecutor: "I still didn't hear how an eight year old got confused about this. You heard a lot of things from defense counsel, and what it made me think of was, if you've ever been outside and looked into a clear stream—a crystal clear stream, you can see the bottom—you can see fish swimming around it. What happens when you throw a rock in that stream? You throw it down hard and mud comes up; you can't see the water, you can't see the bottom, you can't see the fish. They're still there. Focus on the evidence. Use your good common sense. Clear through that and focus on what's important in this case." We disagree with the defendant's claim that those remarks amounted to prosecutorial misconduct.

"The parameters of the term zealous advocacy are also well settled. The prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . [T]he prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel. . . . It does not follow [however] that every use of rhetorical language or device is improper. . . . The occasional use of rhetorical devices is simply fair argument." (Citations omitted; internal quotation marks omitted.) *State* v. *Rogelstad*, supra, 73 Conn. App. 31; see also *State* v. *Brown*, 71 Conn. App. 121, 128, 800 A.2d 674, cert. denied, 261 Conn. 940, 808 A.2d 1133 (2002).

"Closing arguments of counsel, however, are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly

infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations. . . . [S]ome leeway must be afforded to the advocates in offering arguments to the jury in final argument. . . . [C]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Chasse*, supra, 51 Conn. App. 358.

We conclude that when read in context, the challenged remarks fell within the bounds of proper commentary on the defendant's theory of defense. The prosecutor's remarks neither belittled the theory of the defense nor impugned the role of defense counsel. His comments concerned the different theories presented by the parties and properly implored the jury to look at the evidence and to use common sense. Accordingly, the defendant has failed to demonstrate that the comments were improper or that they deprived him of a fair trial. See id., 359; see also *State* v. *Jenkins*, 70 Conn. App. 515, 537–38, 800 A.2d 1200, cert. denied, 261 Conn. 927, 806 A.2d 1062 (2002). Although the prosecutor might have chosen a more suitable analogy, we cannot say that his remarks, when viewed in context, rose to the level of blatantly egregious misconduct that would implicate the defendant's constitutional right to due process.

Because we conclude that the prosecutor's remarks were not improper or blatantly egregious, we cannot find that, separately or collectively, they were harmful. The defendant has failed to carry his burden of demonstrating that he clearly was deprived of his fundamental

constitutional right to a fair trial. The defendant's first claim, therefore, fails under *Golding*'s third prong.

## II

The defendant's second claim is that the court improperly instructed the jury to ignore certain questions that the defendant asked the victim during cross-examination. Specifically, the defendant argues that the court's instruction to disregard the evidence violated his constitutional rights to a trial by a jury, to confront witnesses against him and to present a defense as guaranteed by the sixth and fourteenth amendments to the federal constitution.[4] We disagree.

The following facts are necessary to place the defendant's claim in its proper context. The defendant questioned the victim during cross-examination regarding her alleged bias against black people and alleged use of racial slurs.[5] The victim denied that she had ever used any racial slurs. The court instructed the attorneys that both counsel must be mindful that a good faith basis is needed to ask questions. The victim's mother later testified that she had never heard the victim use any racial slurs and that the victim did not have any problems with the defendant prior to the incident at issue. The defendant did not question the mother or any other witnesses about the same. The state argued that the defendant lacked a good faith basis to ask the victim those questions and did not present evidence to support that line of questioning at that time. The defendant objected to any curative instruction. The

---

[4] The defendant makes this claim pursuant to the federal and state constitutions. The defendant, however, fails to provide an independent analysis under the state constitution. Thus, we confine our analysis to a discussion of the defendant's rights under the federal constitution. See *State* v. *Rivera*, 70 Conn. App. 203, 207 n.5, 797 A.2d 586, cert. denied, 261 Conn. 910, 806 A.2d 50 (2002).

[5] Defense counsel asked the victim if she had ever called the defendant "nigger."

court, however, gave a curative instruction for the jury to disregard that portion of the defendant's cross-examination.

"The right to confrontation is fundamental to a fair trial . . . . It is expressly protected by the sixth and fourteenth amendments to the United States constitution . . . . The right of *physical* confrontation is a . . . fundamental component of the [federal confrontation clause] . . . and guarantees an accused the right to be present in the courtroom at every stage of his trial. . . .

"The defendant is entitled fully and fairly to confront and cross-examine the witnesses against him. . . . The primary interest secured by the right of confrontation is the right to cross-examine witnesses. . . . The defendant does have a right under the confrontation clause to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, [can] appropriately draw inferences relating to the reliability of the [state's] witness. . . . The confrontation clause requires that [if] the testimony of such a witness is to remain in the case as a basis for conviction, the defendant must be afforded a reasonable opportunity to discover any infirmities that may cast serious doubt upon its truthfulness. . . . The right of cross-examination is not, however, absolute. . . . [A] defendant's right of [cross-examination] is not infringed if the defendant fails to pursue a line of inquiry open to him. . . . The test is whether the opportunity to cross-examine existed, not whether full use of such opportunity was made." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Green*, 62 Conn. App. 217, 229–30, 774 A.2d 157 (2001), aff'd, 261 Conn. 653, 804 A.2d 810 (2002); *State* v. *Reeves*, 57 Conn. App. 337, 346, 748 A.2d 357 (2000).

"Relevance may be established in one of three ways. First, the proffering party can make an offer of proof.

. . . Second, the record can itself be adequate to establish the relevance of the proffered testimony. . . . Third, the proffering party can establish a proper foundation for the testimony by stating a good faith belief that there is an adequate factual basis for his or her inquiry." (Internal quotation marks omitted.) *State* v. *McPhee*, 58 Conn. App. 501, 513, 755 A.2d 893, cert. denied, 254 Conn. 920, 759 A.2d 1026 (2000). "A good faith basis on the part of examining counsel as to the truth of the matter contained in questions propounded to a witness on cross-examination is required. . . . A cross-examiner may inquire into the motivation of a witness if he or she has a good faith belief that a factual predicate for the question exists." (Citation omitted; internal quotation marks omitted.) *State* v. *Beliveau*, 237 Conn. 576, 586, 678 A.2d 924 (1996). The defendant did not show that he had a good faith belief that such a factual predicate exists. We therefore reject his claim that the court improperly infringed on his right to cross-examine.

We next turn to the defendant's claims concerning the jury charge. "Our Supreme Court's standard of review regarding claims of improper jury instruction is well established. [A] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper."

(Internal quotation marks omitted.) *State* v. *Davis*, 76 Conn. App. 653, 677, 820 A.2d 1122 (2003).

In the present case, the court in relevant part stated in its charge: "Questions are not evidence. There were some questions asked that were left—that were asked of the [victim] on cross-examination by the, by . . . counsel in defending [the defendant]. Those questions were of a nature that the evidence in this case does not support. There's no connection with that evidence at all, none. You disregard that. That plays no part, no part in your deliberations. There's enough. You've heard her complaint. You heard the witnesses testify. You heard the defense position. Focus on the facts presented in the orderly course of the trial." The record and transcripts do not reflect nor does the defendant claim that the court placed any restrictions on his ability to cross-examine the victim, her mother or any other witnesses on the issue of the victim's alleged bias and use of racial slurs. Rather, the defendant argues that the court's instruction was improper because it impaired his rights to confrontation, to present a defense and to trial by jury in that the instruction precluded the jury from considering a matter that was brought before it as a result of the mere fact that his attorney did not explicitly state her "good faith belief" on the record.

Although the defendant had an opportunity to cross-examine the victim, her mother and other witnesses on that issue, he failed to make full use of that opportunity. The defendant did not offer any proof or evidence of the victim's alleged racial bias to support that line of questioning. We conclude that the court's exclusion of cross-examination questions into the aspect of the victim's alleged "prejudicial" statements was not improper because the line of questioning by the defendant was not based in good faith. See *State* v. *Beliveau*, supra, 237 Conn. 590. Allowing the jury to consider that

line of questioning would only have distracted the jury from the real issues in the case. See *State* v. *Henry*, 72 Conn. App. 640, 667, 805 A.2d 823, cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002).

Accordingly, the court's instruction that the jury should not speculate on unsubstantiated claims did not deprive the defendant of his constitutional right to confrontation, to present a defense or to a trial by jury because the instruction was legally correct. The instruction provided the jury with guidance, not a directive, as to how to consider the testimony and evidence presented. The defendant's claim does not involve the denial of a fundamental right and, therefore, we cannot conclude that the court's jury instruction was improper.

### III

The defendant's final claim is that the court improperly precluded the defendant from cross-examining the victim's mother about the effect her parents' divorce had on the victim. Specifically, the defendant argues that the court's ruling deprived him of his constitutional rights to confront a witness and to present a defense, which are guaranteed by the sixth and fourteenth amendments to the federal constitution.[6] We disagree with the defendant's claim.

During defense counsel's cross-examination of the victim's mother, the mother testified that she and the victim's father were in the process of divorcing and that the divorce was difficult for her and the victim. The mother testified that she had placed the victim in counseling because of the divorce and that the victim

---

[6] The defendant makes his claim pursuant to the federal and state constitutions. The defendant, however, fails to provide an independent analysis under the state constitution. Thus, we confine our analysis to a discussion of the defendant's rights under the federal constitution. See *State* v. *Rivera*, 70 Conn. App. 203, 207 n.5, 797 A.2d 586, cert. denied, 261 Conn. 910, 806 A.2d 50 (2002).

had had a hard time concentrating in school because of the divorce. The state proceeded to then object to further questions regarding that issue, such as whether the victim had started doing things that she did not do before, if the mother believed that she had to spend more time with the victim and if the victim had changed since the divorce started. The court sustained the prosecutor's objections, and defense counsel argued the relevance of her line of questioning. Defense counsel argued that the victim was in treatment at the time of the allegations and that the child might have been making up stories to get her mother's attention. The court sustained the objections.

"[T]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . This right, however, is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. . . . The trial court, in its discretion, may impose limitations on the scope of cross-examination, as long as the defendant has been permitted sufficient cross-examination to satisfy constitutional requirements. . . . The confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited and the right to cross-examine is subject to the duty of the court to exclude irrelevant evidence. . . .

"[T]he trial court has wide discretion to determine the relevance of evidence . . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . However, [w]hen defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense.

. . . The proffering party bears the burden of establishing the relevance of the offered testimony." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 65 Conn. App. 449, 457–58, 783 A.2d 53, cert. denied, 258 Conn. 927, 783 A.2d 1032 (2001).

"[A]n important function of cross-examination is the exposure of a witness' motivation [for] testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Reynolds*, supra, 264 Conn. 58–59; *State* v. *Gainey*, 76 Conn. App. 155, 163, 818 A.2d 859 (2003).

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . To establish that the court abused its discretion, the defendant bears the burden of demonstrating that the restrictions that the court imposed on the cross-examination were clearly prejudicial. . . . Once we conclude that the court's ruling on the scope of cross-examination is not constitutionally defective, we will apply every reasonable presumption in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 65 Conn. App. 458–59; *State* v. *Reeves*, supra, 57 Conn. App. 345–47.

With those standards in mind, we conclude that the defendant's cross-examination of the witness satisfied constitutional requirements and that the court did not abuse its discretion in limiting the questioning as it did. A review of all the evidence, particularly that of the victim and her mother in light of the excluded inquiries, shows that from the relevant evidence and the issues actually litigated, the defendant was not unduly restricted on his cross-examination. Defense counsel also had the opportunity to cross-examine the victim's counselor regarding the victim's counseling sessions and the victim's reactions to the parents' divorce, but decided to question the counselor regarding children of divorced parents bringing false charges of abuse. The evidence shows that defense counsel was allowed to expose to the jury the facts from which the jurors, as the judges of credibility and the finders of fact, properly could draw the necessary inferences to aid them in determining the reliability of the witnesses' testimony and the victim's motive. Thus, the constitutional requisites of the sixth amendment were met adequately.

Turning to the issue of whether the court abused its discretion in its challenged rulings on cross-examination, we decide that it did not. It is apparent that the court was aware that it had the right and "indeed, [the] duty, to exclude irrelevant evidence." (Internal quotation marks omitted.) *State* v. *Reeves*, supra, 57 Conn. App. 355; see *State* v. *Williams*, supra, 65 Conn. App. 459. As noted, defense counsel had a wide range of inquiry on cross-examination. The defendant had the burden of showing that "the restrictions imposed upon [the] cross-examination were clearly prejudicial." (Internal quotation marks omitted.) *State* v. *Reeves*, supra, 355. He has not done so. The court did not abuse its discretion and, therefore, did not violate the defendant's constitutional rights to confrontation or to present a defense.

The judgment is affirmed.

In this opinion the other judges concurred.