# STATE OF CONNECTICUT *v.* JEFFEREY TATE
## (AC 22801)

Flynn, McLachlan and Mihalakos, Js.

Argued May 4—officially released October 5, 2004

*Carlos E. Candal,* special assistant public defender, for the appellant (defendant).

*Julia K. Conlin,* deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Susan F. Filan,* assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Jefferey Tate, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and two counts of sale of narcotics within 1500 feet of a public school and a public housing project in violation of General Statutes § 21a-278a (b). On appeal, the defendant claims that (1) improper comments made by the prosecutor during closing argument deprived the defendant of a fair trial and (2) the court improperly admitted evidence of uncharged misconduct. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The defendant's arrest stemmed from two separate incidents in which he sold narcotics to Edward Azzaro, an undercover trooper with the state police, and to Edwin Kohl, an undercover detective with the state police. Azzaro and Kohl were assigned to the state police statewide cooperative crime control task force, also known as the "Rocky Unit."

On August 31, 1999, at approximately 4 p.m., Azzaro drove to the Trumbull Gardens housing project in

Bridgeport to purchase narcotics as part of an investigation being conducted by the Rocky Unit. He proceeded along Trumbull Avenue and drove into a parking lot where drug dealers were known to gather. The defendant approached Azzaro's vehicle and asked Azzaro what he wanted to purchase. Azzaro asked the defendant if he had any "dope," a street name for heroin. The defendant responded that although he did not have any dope, he did have "slabs," a street name for crack cocaine. The defendant showed the drugs to Azzaro. The drugs were packaged in small plastic bags. The substance inside the bags later tested positive for cocaine during a laboratory test.[1]

Azzaro purchased five slabs from the defendant for $30. He then brought the slabs to his police team, which was waiting at a prearranged location. William Brooks, the Rocky Unit's evidence officer, secured the bags in another plastic bag and attached to it a tag with his initials to show that he had processed the evidence. Azzaro described the defendant to the members of his team and later identified the defendant in a photographic array.

The second drug transaction for which the defendant was arrested took place on September 7, 1999, at around 4:15 p.m. Kohl drove into the Trumbull Gardens housing project, where he observed three black males, including the defendant, standing under a large tree. One of the men made eye contact with Kohl and approached Kohl once he drove to the curb. Kohl told that individual that he wanted "p-dope," a street name for heroin. The individual then motioned to Kohl to go to the parking lot where the defendant was located. The defendant told Kohl that he had three slabs of p-dope and asked

---

[1] The substance initially tested negative in a field test. Field tests, however, according to Jane Codraro, a chemist with the state toxicology laboratory, are less sensitive than the more reliable laboratory tests.

the detective how many he would like to purchase. Kohl told the defendant that he wanted to purchase three slabs. The defendant sold three glassine envelopes to Kohl for $30.

Kohl then met his police team at a prearranged location, where he gave the envelopes to Brooks. Kohl described the defendant to his team and later identified the defendant in a photographic array. The substance contained in the envelopes tested positive for heroin during a field test and in a subsequent laboratory test. The defendant was arrested and charged with two counts of sale of narcotics in violation of § 21a-278 (b) and two counts of sale of narcotics within 1500 feet of a public school and a public housing project in violation of § 21a-278a (b). The jury convicted the defendant on all counts. The court sentenced the defendant to a total effective term of thirty-six years incarceration, sixteen years of which were nonsuspendable. This appeal followed.

I

The defendant first claims that improper comments made by the prosecutor during her rebuttal closing argument constituted misconduct that deprived him of his federal and state constitutional rights to a fair trial.[2] Specifically, the defendant claims that (1) the rebuttal closing argument improperly shifted the burden to him to prove that the police were lying, (2) the prosecutor improperly expressed her personal opinion and (3) the cumulative effect of her misconduct so infected the proceedings as to deprive him of a fair trial.

The following additional facts are relevant to our resolution of the defendant's claim. Defense counsel,

---

[2] To the extent that the defendant relies on his state constitutional right to a fair trial, we decline to review the claim because he has failed to provide an independent analysis of the state constitutional issue. See *State* v. *Coney,* 266 Conn. 787, 791 n.4, 835 A.2d 977 (2003).

in her closing argument, focused on the credibility of the state's police witnesses and the police investigation leading to the defendant's arrest, characterizing the investigation as "a mass production undercover sting." Defense counsel attacked the chain of custody, concentrating on the inability of Azzaro, Brooks and Kohl to affirm positively that the bags of narcotics presented at trial were those purchased from the defendant. Defense counsel questioned the reliability of the laboratory tests, emphasizing that the drugs sold to Azzaro initially tested negative in a field test. Defense counsel also portrayed the photographic arrays from which Azzaro and Kohl identified the defendant as tainted and suggestive and cited typographical errors in Brooks' police reports.

The prosecutor responded to the defendant's arguments in rebuttal closing argument. The prosecutor argued to the jurors that to believe defense counsel's argument that the bags of narcotics presented at trial were not those actually purchased from the defendant, it would be necessary for the jurors to find that Azzaro, Brooks and Jane Codraro, a chemist with the state toxicology laboratory, were lying. The prosecutor argued that because the police witnesses followed proper procedure, it was immaterial that they could not affirmatively state that the bags presented at trial were those purchased from the defendant. The prosecutor also described the defense as "an accusation against the police, as if there's some grand conspiracy," and urged the jury not to decide the case in such a manner.

The defendant seeks review of his unpreserved claims pursuant to State v. Golding, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Our Supreme Court, however, recently decided that in conducting a due process analysis in cases involving claims of prosecutorial misconduct, "it is unnecessary for a reviewing court to apply the four-prong Golding test. The reason for this

is that the touchstone for appellate review of claims of prosecutorial misconduct is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). . . . The application of the *Williams* factors . . . is identical to the third and fourth prongs of *Golding*, namely, whether the constitutional violation exists, and whether it was harmful. . . . Requiring the application of both *Williams* and *Golding*, therefore, would lead . . . to confusion and duplication of effort." (Citations omitted.) *State* v. *Stevenson*, 269 Conn. 563, 573–74, 849 A.2d 626 (2004).

We first set forth the applicable standard of review. "[I]n analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial, an inquiry that . . . necessarily will require evaluation of [a] defendant's other misconduct claims." (Internal quotation marks omitted.) *State* v. *Coney*, 266 Conn. 787, 808, 835 A.2d 977 (2003).

"We previously have observed that because closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined pre-

cisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Nevertheless, [w]hile a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Williams*, 81 Conn. App. 1, 5–6, 838 A.2d 214, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

It is with those principles in mind that we now turn to the specific conduct to which the defendant takes exception.

A

The defendant first claims that the prosecutor's rebuttal closing argument improperly shifted the burden of proof to him to prove that the police witnesses were lying. We agree and conclude that it was improper for the prosecutor to state to the jurors that they would have to believe that Azzaro, Brooks and Codraro lied in order to find that the bags of narcotics presented at trial were not those purchased from the defendant.

"[P]rosecutorial misconduct of constitutional proportions may arise during the course of closing argument, thereby implicating the fundamental fairness of the trial itself . . . ." (Internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 700, 793 A.2d 226 (2002). "[C]ourts have long admonished prosecutors to avoid statements to the effect that if the defendant is innocent, the jury must conclude that witnesses have lied. . . . The reason for this restriction is that [t]his form of argument . . . involves a distortion of the government's burden of proof. . . . Moreover . . . such arguments preclude the possibility that the witness' testimony conflicts with that of the defendant for a reason other than deceit." (Citations omitted; internal quotation marks omitted.) Id., 709–10.

In this case, the defendant attacked the credibility of the police investigation and the testimony of the police witnesses, paying particular attention to the inability of Azzaro, Brooks and Kohl to state affirmatively that the bags of narcotics presented at trial were the same bags purchased from the defendant. Consequently, the prosecutor's rebuttal essentially directed the jurors that to accept the defendant's theory and to acquit him, the jurors necessarily would have to disbelieve the state's witnesses.[3] That line of argument clearly is improper under *Singh*, in which our Supreme Court held that "closing arguments providing, in essence, that in order to find the defendant not guilty, the jury must find that witnesses had lied, are . . . improper." Id., 712.

## B

The defendant next claims that the prosecutor improperly appealed to the emotions and passions of the jury when she expressed her personal opinion. Specifically, the defendant contends that the state diluted its burden of proof by arguing to the jury that the state did not have an obligation to present certain evidence and that the police were not required to state affirmatively that the bags of narcotics presented at trial were those actually purchased from the defendant. The defendant also argues that the state invited the jury to excuse the lack of evidence or inconsistent evidence. We disagree.

It is well settled that "[a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors.

---

[3] The prosecutor addressed the jury during rebuttal closing argument, stating in relevant part: "This is a simple case. I think for you to find that the five bags of crack cocaine that the lab tested aren't the same five bags that undercover Officer Edward Azzaro bought from [the defendant], you would have to disbelieve the testimony of Edward Azzaro. You would have to think he's lying. You would have to disbelieve the testimony of [William] Brooks. You would have to think he's lying. And you would have to disbelieve the testimony of the state toxicologist, Jane Codraro. You would have to think she's lying."

. . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal. . . . Therefore, a prosecutor may argue the state's case forcefully, [but] such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *David P.*, 70 Conn. App. 462, 475, 800 A.2d 541, cert. denied, 262 Conn. 907, 810 A.2d 275 (2002). Moreover, "[t]he prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 81 Conn. App. 8; see also Rules of Professional Conduct 3.4.[4]

"Closing arguments of counsel, however, are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."

---

[4] Rule 3.4 of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not . . . (5) In trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused . . . ."

(Emphasis in original; internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 358, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). "If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 81 Conn. App. 13.

1

The defendant first takes exception to the prosecutor's argument regarding the chain of custody connecting the bags of narcotics purchased from the defendant and those presented as evidence at trial. The prosecutor argued, in essence, that the chain of custody was unbroken and therefore that the jury should believe that the bags presented as evidence at trial were those purchased from the defendant.[5]

We conclude that the comments were not improper because they were based on facts in evidence. "As an advocate, the state's attorney may permissibly employ forceful arguments based upon the facts in evidence *and the reasonable inferences drawn from such facts.*" (Emphasis added.) *State* v. *Coney*, supra, 266 Conn. 812. Azzaro, Brooks and Kohl testified as to the procedure by which the bags of narcotics purchased from the defendant were processed as evidence. Moreover, when read in context, the challenged remarks were a proper response to the defendant's attack on the police investigation and properly implored the jurors to consider the evidence and to use their common sense.

---

[5] Specifically, the defendant challenges the prosecutor's argument that "[b]ecause the chain of custody is unbroken . . . you can believe and, I submit to you, you must believe that those are the same drugs [that the defendant] sold to Edward Azzaro."

2

The defendant next claims that the prosecutor asserted her personal opinion when she argued that she "[didn't] care" that Azzaro could not affirm that the bags of narcotics presented at trial were those he purchased from the defendant.[6] We disagree.

"The mere use of phrases such as 'I would think,' 'I would submit,' and 'I really don't think,' does not transform a closing [argument] into the improper assertions of personal opinion by the state's attorney." *State* v. *Coney*, supra, 266 Conn. 814–15. "[U]se of the personal pronoun I is a normal and ordinary use of the English language. If courts were to ban the use of it, prosecutors would indulge in even more legalese than the average lawyer, sounding even more stilted and unnatural." (Internal quotation marks omitted.) *State* v. *Wickes*, 72 Conn. App. 380, 388, 805 A.2d 142, cert. denied, 262 Conn. 914, 811 A.2d 1294 (2002); accord *State* v. *Burton*, 258 Conn. 153, 167 n.13, 778 A.2d 955 (2001) (argument stating in part that " 'you heard testimony that was different in some details, but details that don't matter' " not improper).

The prosecutor's comments were made within the context of her chain of custody argument. Consequently, those comments were also based on facts in evidence. As stated, Azzaro, Brooks and Kohl testified as to the procedure used to process the bags as evidence. The prosecutor's comments, therefore, were a permissible attempt to argue to the jurors that despite Azzaro's testimony, it would be reasonable for them to find, on the basis of the evidence before them, that the defendant was guilty. Although we do not approve of

[6] The prosecutor argued that "[t]he reason I don't care that undercover Officer Edward Azzaro can't say or didn't say under oath, 'I swear those are the same bags,' is because he doesn't have to. That's not his job. That doesn't matter."

the manner in which the prosecutor presented her argument, we cannot conclude, under the circumstances of this case, that her comments were improper.

### 3

Last, the defendant claims that the prosecutor improperly appealed to the emotions of the jury when she argued that the jury would be biting a "rotten apple" if it decided the case on the basis of the defendant's attack on the police investigation that led to his arrest.[7]

Even if we assume, without deciding, that the prosecutor's use of the term "rotten apple" was not proper, we conclude that it was not, in the context of the entire trial, sufficient to deprive the defendant of a fair trial. Although the prosecutor might have chosen a more suitable metaphor, we cannot say that her remarks, when viewed in context, rose to the level of blatantly egregious misconduct that would implicate the defendant's constitutional right to due process. See *State* v. *Williams*, supra, 81 Conn. App. 17 (analogy between defense counsel's argument and clear stream being muddied by rock thrown into it not improper). Moreover, it is well established that "[t]he occasional use of rhetorical devices is simply fair argument." (Internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 464, 832 A.2d 626 (2003) (prosecutor's reference to author Lewis Carroll's " 'topsy-turvy' " imaginary worlds not improper).

### C

We must now conduct the second step of our two part analysis in order to determine whether the misconduct

---

[7] The prosecutor argued in relevant part: "The defense is not the defense against [the defendant]; it's putting the state police on trial. And if you think that's appropriate, if you think they did something wrong, if you think that's the way this case should be decided, that is solely within your function. That's your province, that's your domain. I would submit to you, though, that that would be biting a rotten apple and that you really shouldn't decide this case that way."

discussed in part I A deprived the defendant of a fair trial. The defendant argues that the cumulative effect of the misconduct so infected the proceedings as to deprive him of a fair trial. We disagree.

"The ultimate question is, in light of the conduct that we have concluded was improper, whether the trial as a whole was fundamentally unfair and [whether] the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Singh*, supra, 259 Conn. 723. In making that determination, "[t]he fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Citation omitted; internal quotation marks omitted.) *State* v. *Williams*, supra, 81 Conn. App. 5–6.

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, supra, 204 Conn. 540.

Considering each of those factors, we conclude that the improper comment made by the prosecutor in violation of *State* v. *Singh*, supra, 259 Conn. 712, did not deprive the defendant of a fair trial. First, the prosecutor

was responding to the arguments made in closing argument by defense counsel. The prosecutor, despite the use of improper argument, was rebutting defense counsel's attack on the integrity of the police investigation, and, specifically, on the inability of the police witnesses to affirm that the bags of narcotics presented at trial were those purchased from the defendant. The prosecutor's comments, therefore, were invited by defense counsel.

Next, the prosecutor's comments, when taken in context, were not severe. Her comments were couched within her argument on the chain of custody attaching to the bags of narcotics. As discussed in part I B, the prosecutor's chain of custody argument was based properly on facts in evidence. Moreover, immediately following those comments, the prosecutor reminded the jurors of their function to assess the credibility of the witnesses.[8] We also find persuasive the fact that defense counsel neither objected nor requested the court to take any curative measures. "When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 575; see also *State* v. *Ceballos*, 266 Conn. 364, 414, 832 A.2d 14 (2003).

Moreover, the improper comments were not frequent in that they were confined solely to the state's closing rebuttal argument. "Although prosecutorial misconduct can occur in the course of closing argument alone, that single improper comment, which was made only during closing argument demonstrates that such [comment

---

[8] The prosecutor stated to the jury that "I would submit to you, you heard the testimony of each and every single officer the state called. You decide for yourselves. You assess for yourselves their credibility, their bias, their prejudice, their motive to lie and see if you can find one."

was] not a pervasive quality of the entire proceeding." (Internal quotation marks omitted.) *State* v. *Wickes*, supra, 72 Conn. App. 399.

Further, the misconduct was not central to the critical issues of the case when analyzed in conjunction with the strength of the state's case. The defendant relies on *Singh* and its progeny in contending that he was deprived of a fair trial. Our Supreme Court, however, has distinguished cases involving a "credibility contest" from cases in which testimony is corroborated by physical evidence. See *State* v. *Ceballos*, supra, 266 Conn. 416–17; see also *State* v. *Thompson*, supra, 266 Conn. 480–83. Moreover, even if the state's case cannot be considered "ironclad [our Supreme Court] has never stated that the state's evidence must have been overwhelming in order to support a conclusion that prosecutorial misconduct did not deprive the defendant of a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 596.

This case was not dependent "almost exclusively on the jury's assessment of the credibility of witnesses." *State* v. *Thompson*, supra, 266 Conn. 483. The defendant's arrest came as a result of an organized investigation of drug activity in the Trumbull Gardens housing project spanning twelve months. Azzaro, Kohl and Officer Brian Foote personally engaged in drug transactions with the defendant, and each officer subsequently identified the defendant from photographic arrays and at trial. Brooks testified as to the process by which the narcotics purchased by Azzaro and Kohl were handled according to police procedure. Further, the officers' testimony was substantiated by physical evidence, namely, the bags of narcotics presented by the state at trial and the positive laboratory results about which Codraro testified. Perhaps most significantly, the state's case did not rest solely on the subject of the prosecutor's improper comments, namely, the chain of evidence

attaching to the bags of narcotics presented at trial. The state presented a strong case, independent of that line of argument.

Last, although the defendant did not request any curative measures, the court adequately instructed the jury on its duty to find the facts. The court instructed the jury "to recollect and weigh the evidence, and form your own conclusions as to what the ultimate facts are." The court reminded the jurors not to be influenced by their personal likes, dislikes, prejudices or sympathies. The court also told the jury that arguments and statements made by attorneys are not evidence and that it was the jury's role to determine the credibility of witnesses.

On the basis of the foregoing analysis, we conclude that the defendant was not deprived of a fair trial.

II

The defendant also claims that the court improperly admitted evidence involving his uncharged misconduct. Specifically, the defendant claims that the court improperly permitted the state to present evidence of an uncharged third sale in which he had allegedly deceived an undercover officer by selling him a substance that tested negative for narcotics. The defendant also contends that the prejudicial effect of that evidence outweighed the probative value of the evidence. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. On April 16, 2001, the state informed the court that it intended to present evidence of a third sale by the defendant to Foote as indicative of a continuing course of conduct by the defendant. The state argued that the third sale also was relevant to intent, identity and common scheme. The court allowed the state to introduce the evidence as it

related to intent, but found it to be inadmissible to show identity and common scheme. At the request of the defendant, the court indicated that it would give a limiting instruction to the jury on the evidence.

Foote testified at trial that on September 23, 1999, at the Trumbull Gardens housing project, he purchased from the defendant three bags containing a substance he believed to be crack cocaine. After the sale, Foote met other state police officers, who brought him to a prearranged location. Foote turned the bags he purchased from the defendant over to Brooks. Field tests performed by Brooks on the three bags returned negative results for narcotics. The contents of the bags also returned negative test results at the state laboratory. Subsequently, Foote identified the defendant in a photographic array as the individual from whom he had purchased the bags.

Brooks corroborated Foote's testimony when he testified that the field tests he conducted on the substances Foote gave him returned negative results. Brooks described the procedure he used to mark the bags as evidence and to prepare the bags for transport to the state toxicology laboratory. Codraro then testified that she tested the substance contained in the bags and found that none of the bags contained a controlled substance.

Following the testimony offered by Foote and Brooks, the court instructed the jurors that if they found the evidence to be credible, they were to consider the evidence of the third sale only for the purpose of determining intent. The court specifically instructed the jurors that they were not to consider the evidence as indicative of the defendant's bad character or his tendency to commit crimes. The court reiterated that instruction during its final jury charge.

We first set forth the applicable standard of review. "Evidence of a defendant's uncharged misconduct is inadmissible to prove that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. . . . Exceptions to this rule have been recognized, however, to render misconduct evidence admissible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . .

"Uncharged misconduct evidence must satisfy a two part test in order to be admitted under one of the exceptions. First, the evidence must be relevant and material to at least one of the claimed exceptions, and, second, the evidence's probative value must outweigh its prejudicial effect. . . . Since the admission of uncharged misconduct evidence is a decision within the discretion of the trial court, we will draw every reasonable presumption in favor of the trial court's ruling. . . . We will reverse a trial court's decision only when it has abused its discretion or an injustice has occurred." (Citations omitted.) *State* v. *Graham*, 33 Conn. App. 432, 438–39, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994).

We conclude that the court did not abuse its discretion in admitting evidence of the third sale as uncharged misconduct. The court considered the admissibility of the evidence, conducting a full hearing outside the presence of the jury. The court excluded evidence of the defendant's uncharged misconduct for purposes other than intent, demonstrating that it carefully considered and weighed the prejudicial effect of the evidence against its probative value before ruling on its admissibility. Accord *State* v. *McPhee*, 58 Conn. App. 501, 511, 755 A.2d 893, cert. denied, 254 Conn. 920, 759 A.2d 1026 (2000). Moreover, the court gave the jury a limiting instruction as to the specific purpose for which the

evidence could be considered. It is well settled that the jury is presumed to follow the court's instructions. *State v. Lucas*, 63 Conn. App. 263, 275, 775 A.2d 338, cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001).

The defendant argues that the third sale was irrelevant because the intent required to prove sale of narcotics is different from the intent necessary to prove misrepresentation of a controlled substance. In response, the state contends that because the evidence was offered as evidence of intent to sell narcotics, it was unnecessary for the state to show that the defendant knew the character of the substance he sold to Foote. We agree with the state. It is well established that knowledge of the substance is not an essential element of the crime of sale of narcotics. *State v. Valle*, 81 Conn. App. 525, 531 n.4, 840 A.2d 1200, cert. denied, 268 Conn. 921, 846 A.2d 883 (2004). Accordingly, the third sale was relevant to the defendant's intent to engage in the sale of narcotics, and it is of no moment whether he knew the character of the substance he sold to Foote.

The judgment is affirmed.

In this opinion the other judges concurred.