STATE OF CONNECTICUT *v.* JAMES ROCCO
(AC 19344)

Spear, Hennessy and Mihalakos, Js.

Argued January 21—officially released July 4, 2000

*Michael L. Moscowitz*, special public defender, for the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom were *Michael Dearington*, state's attorney, and *David J. Strollo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, James Rocco, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and kidnapping in the second degree in violation of General Statutes § 53a-94.[1] He claims that (1) § 53a-70 (a) (1) is unconstitutionally vague as applied to the facts of this case and (2) the court improperly denied his motion for judgment of acquittal on the charge of kidnapping in the second degree because the evidence of an abduction was insufficient to support his conviction on that charge. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim had a romantic relationship with the defendant for five months. On March 25, 1995, the cou-

---

[1] The defendant also was convicted of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1), and assault in the second degree in violation of General Statutes § 53a-60 (a) (2). He did not appeal from those convictions.

ple traveled to Mystic during the day and at 8 p.m. stopped at a bar in Branford. After the victim told the defendant that she wanted to leave, the defendant became upset and left the victim at the bar. The victim then left the bar and returned to her apartment in New Haven.

Shortly after 9 p.m., the victim went out with a male friend. She returned to her apartment between 1 a.m. and 1:30 a.m., where, unbeknownst to her, the defendant was waiting.[2] When the victim entered her living room, the defendant slammed the door, picked up the victim by her hair and threw her across the room, over a couch and into an entertainment center. The defendant cursed at the victim, demanded to know where she had been, accused her of "fooling around" and threatened to kill her. He then hit her with a hammer about twenty times on her forehead and temple and kicked her legs, poured soda on her head, ripped off her necklace, bracelet and earrings, and took all of the telephones off their receivers so that the victim could not make any calls. The victim eventually urinated on her carpet because the defendant repeatedly refused to allow her to go to the bathroom.

The defendant then took a knife and cut off the victim's clothes, ripped off her brassiere and left her sitting in the middle of the floor. He then ordered the victim to take a shower because she was "dirty, scummy, crummy." When she told him that she had finished showering, he told her, "You're not done, clean up with this," and he handed her an old enema bag that had been in the garage. The victim refused to use the enema bag, but the defendant filled it with water and forced the tube into her vagina. After the water had completely drained out of the bag, the defendant filled it again with ice cold water and repeated the process.

[2] The victim testified that the defendant occasionally stayed at her apartment and kept some of his belongings there.

The victim slept in the bathroom for part of the night. When she awoke the next morning, she asked the defendant if she could call her children. He permitted her to do so, but told her to tell them that she had been in a car accident. He also told her that she was not to invite the children to her apartment. Although the victim felt sick and dizzy, the defendant refused to allow her to seek medical attention. He eventually left the apartment that afternoon at 1 p.m., and the victim went to Yale-New Haven Hospital.

The defendant was subsequently arrested and charged with sexual assault in the first degree, kidnapping in the second degree, attempt to commit assault in the first degree, assault in the second degree and tampering with a witness. The defendant was convicted of all of the charges except tampering with a witness. This appeal followed.

I

The defendant claims that his conviction of sexual assault in the first degree under § 53a-70 (a) (1) should be vacated because the statute is unconstitutionally vague as applied to the facts of this case. Specifically, he claims that he was not given fair warning that his conduct was violative of the statute. We disagree.[3]

Although the defendant's claim was not raised at trial, we will review it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In *Golding*, our

_____

[3] The defendant supports his claim that the statute is unconstitutionally vague by positing the hypothetical that "a parent who inserts a thermometer into [the rear end of] a child would [commit] sexual assault whether it is by the use of force or not." We do not consider that hypothetical situation here because the defendant does not contend that his first amendment rights were implicated. "Where a statute is attacked as void for vagueness, and no first amendment rights are implicated, the constitutionality of the statute is determined by its applicability to the particular facts at issue." *State* v. *Ryan*, 48 Conn. App. 148, 153, 709 A.2d 21, cert. denied, 244 Conn. 930, 711 A.2d 729, cert. denied, 525 U.S. 876, 119 S. Ct. 179, 142 L. Ed. 2d 146 (1998).

Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id.

The first two prongs of *Golding* are satisfied. First, the record is adequate to review the defendant's claim because it reflects both that he was convicted under § 53a-70 (a) (1) and the basis of his conviction. See *State* v. *Indrisano*, 228 Conn. 795, 800, 640 A.2d 986 (1994). Second, a claim that a statute is unconstitutionally vague implicates a defendant's fundamental due process right to fair warning. See *State* v. *Schriver*, 207 Conn. 456, 459, 542 A.2d 686 (1988). The defendant, however, has failed to meet the third requirement of *Golding* that a constitutional violation clearly exists and clearly deprived him of a fair trial.

To demonstrate that the statute is unconstitutionally vague as applied to him, the defendant "must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the [victim] of arbitrary and discriminatory enforcement." (Internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission*, 249 Conn. 296, 322, 732 A.2d 144 (1999). "As a matter of the due process of law required by our federal and state constitutions, a penal statute must be sufficiently definite to enable a person to know what conduct he [or she] must avoid. . . . [A] law forbidding or requiring conduct in terms so vague that men of common intelligence must neces-

sarily guess at its meaning and differ as to its application violates due process of law." (Citation omitted; internal quotation marks omitted.) *State* v. *Ehlers*, 252 Conn. 579, 584, 750 A.2d 1079 (2000).

We conclude that the defendant had fair warning that § 53a-70 (a) (1) prohibited his conduct.[4] Section 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person . . . ." General Statutes § 53a-65 (2) defines "sexual intercourse" as "vaginal intercourse . . . between persons . . . . Penetration may be committed by an object manipulated by the actor into the genital . . . opening of the victim's body."

The defendant contends that he was not given fair warning that his conduct violated the statute because "the insertion of the end of the hose from the enema bag was for the purpose of cleaning the victim" and was not sexual in nature. Whatever purpose motivated the defendant's conduct, § 53a-70 (a) (1) makes it clear to a person of common intelligence that forcible penetration of the vagina with an object is prohibited. See *State* v. *Faria*, 47 Conn. App. 159, 168, 703 A.2d 1149 (1997), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998) ("[t]he intent required for sexual assault is not sexual gratification but the intent to use force"). Accordingly, the defendant should have known that forcing a tube into the victim's vagina was violative of the statute.

II

The defendant next claims that the court improperly denied his motion for judgment of acquittal because

---

[4] We analyze the defendant's claim only with respect to his claim of inadequate notice of the prohibited conduct because the defendant has not alleged that he was the victim of arbitrary and discriminatory enforcement under § 53a-70 (a) (1).

there was insufficient evidence to support his conviction of kidnapping in the second degree. Specifically, he claims that the state failed to present sufficient evidence to establish that he abducted the victim. We disagree.

"We review a claim of insufficiency of the evidence in accordance with a well established two part test. We first construe the evidence presented at trial in a manner favorable to sustaining the verdict, and then determine whether the jury could reasonably have found, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Sauris*, 227 Conn. 389, 395, 631 A.2d 238 (1993).

After reviewing the evidence presented at trial and the inferences reasonably drawn therefrom, the jury reasonably could have concluded, beyond a reasonable doubt, that the defendant abducted the victim. General Statutes § 53a-94 (a) provides: "A person is guilty of kidnapping in the second degree when he abducts another person." General Statutes § 53a-91 (2) provides that abduct "means to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where he is not likely to be found, or (B) using or threatening to use physical force or intimidation."

The evidence presented at trial was that the defendant refused to let the victim leave her apartment to seek medical attention and, earlier, refused to let her leave her living room to go to the bathroom. He also took all of the telephones off their receivers and allowed the victim to call her children only if she agreed to say what he told her to say. The defendant restrained the victim by beating her with a hammer and threatening to take her life. This evidence provides an ample basis

for the jury's determination that the defendant abducted the victim. Therefore, the evidence was sufficient to support the defendant's conviction of kidnapping in the second degree.

The judgment is affirmed.

In this opinion the other judges concurred.