## STATE OF CONNECTICUT *v.* LUISA BERMUDEZ
### (AC 25546)

DiPentima, Gruendel and Foti, Js.

Argued December 6, 2005—officially released March 7, 2006

*Aaron J. Romano*, special public defender, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph J. Harry*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Luisa Bermudez, appeals from the judgment of conviction, rendered after a jury trial, of two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), and one count of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2). On appeal, the defendant claims that prosecutorial misconduct deprived her of a fair trial. We affirm the judgment of the trial court.

The relevant background facts are set forth in *State v. Bermudez*, 93 Conn. App. 814, 890 A.2d 584 (2006), in which we affirmed the judgment revoking the defendant's probation on the basis of her involvement in an armed robbery in Bridgeport. In this appeal, the defendant challenges her conviction on the charges stemming from the robbery. She specifically claims that the prosecutor improperly (1) failed to disclose a statement of her codefendant, (2) cross-examined her as to other witnesses' veracity, (3) bolstered the credibility

of the state's witnesses and (4) misstated evidence in closing argument. Before addressing those claims, we review several principles concerning prosecutorial misconduct.

We conduct a two step inquiry in analyzing claims of prosecutorial misconduct. "The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 572, 849 A.2d 626 (2004). "The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . [The court] must view the prosecutor's comments in the context of the entire trial." (Internal quotation marks omitted.) Id., 571. "[T]he fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Internal quotation marks omitted.) *State* v. *Antonio A.*, 90 Conn. App. 286, 301, 878 A.2d 358, cert. denied, 275 Conn. 926, 883 A.2d 1246 (2005). The factors to be considered in assessing the prosecutor's actions include "the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987).

I

The defendant first directs us to the prosecutor's actions concerning a statement made by her codefen-

dant, Orema Taft. Taft pleaded guilty to charges that he had participated in the robbery and was sentenced to eight and one-half years incarceration. Taft then served as a defense witness in the defendant's trial and testified that the defendant had not been involved in the robbery. After the defendant rested her case, the prosecutor proffered a rebuttal witness, state police Trooper Mario Rosa, who had interviewed Taft after he pleaded guilty. According to Rosa, Taft had stated that he and the defendant would not have been arrested in connection with the robbery if the defendant had not spoken to one of the robbery victims, Robert Gagstetter. During the robbery, the defendant ordered Gagstetter to remove his jewelry. Gagstetter, who was acquainted with the defendant, recognized her voice and informed the police of her identity. The defendant objected to Rosa's testimony regarding Taft's statement because the state had not disclosed it to her pursuant to Practice Book § 40-11 (a) (6).[1] The defendant argued that if she had known about Taft's statement to Rosa, she might not have called Taft as a witness. The court overruled the objection and offered defense counsel additional time to prepare cross-examination.

The state concedes that it did not comply with Practice Book § 40-11 (a) (6), and we agree. Failure to comply with our rules of practice, however, does not provide a proper basis for a claim of prosecutorial misconduct

---

[1] Practice Book § 40-11 (a) provides in relevant part: "Upon written request by a defendant . . . and without requiring any order of the judicial authority the prosecuting authority . . . shall promptly, but no later than [forty-five] days from the filing of the request . . . disclose in writing the existence of and allow the defendant . . . to inspect . . . any of the following items: . . .

"(6) (i) Any written, recorded or oral statements made by the defendant or a codefendant, before or after arrest to any law enforcement officer . . . concerning the offense charged; or

"(ii) Any relevant statements of coconspirators which the prosecuting authority intends to offer in evidence at any trial or hearing. . . ."

on appeal. Instead, a party seeking a remedy for the opposing party's failure to comply with required disclosures may move the trial court for an appropriate order pursuant to Practice Book § 40-5.[2] We therefore interpret the defendant's claim regarding Taft's statement not as a prosecutorial misconduct claim, but as a claim that the court should have sanctioned the prosecution by prohibiting the introduction of Taft's statement through Rosa's testimony.

"Practice Book § 40-5 gives broad discretion to the trial judge to fashion an appropriate remedy for noncompliance with discovery. . . . Generally, [t]he primary purpose of a sanction for violation of a discovery order is to ensure that the defendant's rights are protected, not to exact punishment on the state for its allegedly improper conduct. As we have indicated, the formulation of an appropriate sanction is a matter within the sound discretion of the trial court. . . . In determining what sanction is appropriate for failure to comply with court ordered discovery, the trial court should consider the reason why disclosure was not made, the extent of prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a

[2] Practice Book § 40-5 provides: "If a party fails to comply with disclosure as required under these rules, the opposing party may move the judicial authority for an appropriate order. The judicial authority hearing such a motion may enter such orders and time limitations as it deems appropriate, including, without limitation, one or more of the following:

"(1) Requiring the noncomplying party to comply;

"(2) Granting the moving party additional time or a continuance;

"(3) Relieving the moving party from making a disclosure required by these rules;

"(4) Prohibiting the noncomplying party from introducing specified evidence;

"(5) Declaring a mistrial;

"(6) Dismissing the charges;

"(7) Imposing appropriate sanctions on the counsel or party, or both, responsible for the noncompliance; or

"(8) Entering such other order as it deems proper."

continuance, and any other relevant circumstances. . . . Suppression of relevant, material and otherwise admissible evidence is a severe sanction which should not be invoked lightly." (Citations omitted; internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 186, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

We find it significant that the defendant learned of Taft's statement by way of the state's proffer of Rosa's testimony outside the presence of the jury. Although the court refused to impose the severe sanction of prohibiting Rosa's testimony as to Taft's statement, it offered defense counsel additional time to prepare cross-examination pursuant to Practice Book § 40-5 (2). The court reasonably could have concluded that the defendant did not suffer prejudice as a result of the state's failure to disclose Taft's statement because the jury was not present when the defendant learned of the statement. The defendant's mere suggestion that she might not have called Taft as a witness is unavailing because the state could have called him instead. In view of the relevance, materiality and admissibility of Taft's statement, we conclude that the court did not abuse its discretion in permitting Rosa to testify as to Taft's statement.

## II

The defendant next claims that the prosecutor improperly cross-examined her as to the testimony of other witnesses. The defendant specifically directs us to four of the prosecutor's questions. In the first question, the prosecutor asked her: "So, what the [judicial] marshals testified to did not occur?" A short time later, the prosecutor asked her: "So, you are saying [that] you never did what [the police officers] said you did?" Thereafter, the defendant testified that she had not slept in the same bedroom with Taft on the night of the

robbery, and the prosecutor then asked her: "You heard that [Taft had testified that] he was with you in bed . . . when he came back from the robbery . . . ?" In the final question on which the defendant bases her claim, the prosecutor asked her: "So, when [Taft] testified that he [told you about the robbery], that was inaccurate?" The defendant did not object to any of those questions during cross-examination,[3] but now claims that they were improper because they concerned other witnesses' veracity.

"[A] witness may not be asked to characterize another witness' testimony as a lie, mistaken or wrong." *State v. Singh*, 259 Conn. 693, 712, 793 A.2d 226 (2002). "[D]eterminations of credibility are for the jury, and not for witnesses. . . . Consequently, questions that ask a defendant to comment on another witness' veracity invade the province of the jury." (Citations omitted; internal quotation marks omitted.) Id., 707. "[Q]uestions of this sort also create the risk that the jury may conclude that, in order to acquit the defendant, it must find that the witness has lied." Id., 708.

We agree with the defendant that the prosecutor should not have asked her whether her testimony contradicted the testimony of the other witnesses. Viewed in the context of the entire trial, however, the prosecutor's four improper questions were too few in number, and the misconduct was not severe enough to deprive the defendant of a fair trial.

---

[3] The defendant's failure to object does not affect our review because the prosecutor's conduct must be considered in the context of the entire trial. We note, however, that "the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was unfair in light of the record of the case at the time. . . . [C]ounsel's failure to object at trial, while not by itself fatal to a defendant's claim, frequently will indicate on appellate review that the challenged comments do not rise to the magnitude of constitutional error . . . ." (Citations omitted; internal quotation marks omitted.) *State v. Stevenson*, supra, 269 Conn. 576.

## III

The defendant next claims that the prosecutor improperly bolstered the credibility of the state's witnesses. We disagree.

During closing argument, the prosecutor told the jury: "[T]he judge will tell you that you can take people's interest in a case, their bias and you can use that . . . to judge someone's demeanor and . . . credibility. . . . [N]ot one of the state's witnesses had an interest in this case. The cops, what do they care? They went and investigated a robbery." Referring to the two robbery victims, Gagstetter and Esau Roque, the prosecutor continued: "Did Mr. Gagstetter have an interest in this case? . . . [H]e lost all [of his] money. So, what is his interest in this case? What is Esau Roque's interest in this case? Nothing. To come in here and get cross-examined . . . subject to what? For what purpose? This is what happened to me. Take it or leave it."

We conclude that the prosecutor's comments did not constitute improper bolstering. "[I]t is not improper for a prosecutor to remark on the motives that a witness may have to lie, or not to lie, as the case may be." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 585. In arguing to the jury that the state's witnesses were credible, the prosecutor merely commented on the witnesses' motives. We therefore reject the defendant's claim.

## IV

The defendant's last claim is that the prosecutor misstated evidence in closing argument. The prosecutor told the jury that only Gagstetter's identification of the defendant's voice had led police to the defendant. In fact, Gagstetter testified that he also had recognized one of the other assailants as "O. T." Gagstetter did not know that "O. T." was Orema Taft and did not know

that Taft lived with the defendant. In contrast, Gagstetter knew the defendant's address and gave it to the police. Because Gagstetter's reference to "O. T." was *not relevant in leading police to the defendant*, we conclude that the prosecutor correctly stated the evidence in closing argument.

The judgment is affirmed.

In this opinion GRUENDEL, J., concurred.

DiPENTIMA, J., concurring. While I agree with and join parts II, III and IV of the majority opinion, I do not join part I because I disagree with the majority that the state's noncompliance with our rules of practice, in this instance, did not constitute prosecutorial misconduct. Because I believe that this misconduct did not deprive the defendant, Luisa Bermudez, of a fair trial, however, I write separately to affirm the judgment.

During the presentation of the defendant's case, Orema Taft, the defendant's codefendant and alleged coconspirator, testified that the defendant had not been involved with the robbery at issue. The state cross-examined Taft about a note the defendant had written to him that was intercepted by judicial marshals on the date Taft first attempted to enter a guilty plea on the charges stemming from the robbery.[1] Taft testified that his attorney told him that a note had been intercepted from the defendant and read to him the contents of the note.[2] Taft then testified that Mario Rosa, a trooper with

---

[1] The court initially refused to accept Taft's plea because he told the court that he had committed the robbery by himself and that no one else, including the defendant, was involved. Taft did not reassert the idea about having committed the robbery on his own the next time he entered his plea, and the court accepted that subsequent plea.

[2] The essence of the note was that Taft should tell the judge before whom he was entering his plea that an individual by the name of Miguel Ramirez committed the robbery with Taft and that the defendant had nothing to do with it and knew nothing of it.

the Connecticut state police, had questioned him about the note. Taft stated that during the questioning by Rosa, he continually averred that the defendant was not involved in the robbery. He also stated that he had told Rosa that he hoped the defendant would "beat the rap" because she was arrested on the robbery for no reason.

The state then offered Rosa as a rebuttal witnesses. The court permitted the state first to make an offer of proof. During its offer, the state elicited testimony from Rosa that while he was asking Taft about the note, Taft brought up the robbery. He stated that Taft indicated that he and the defendant were involved in the robbery and that the only reason they were caught was that the defendant had spoken during the course of the robbery, thereby permitting her voice to be identified by one of the victims. Rosa then explained that Taft had refused to put into writing the statement he had made about the defendant's involvement in the robbery because "he would like to see her beat the rap."

Following the offer of proof, defense counsel objected to the admissibility of Taft's statement to Rosa.[3] The crux of counsel's objection was that the

---

[3] The complete exchange is as follows:

[Defense Counsel]: "I have another problem. It was a statement of the codefendant, which I wasn't provided . . . until this afternoon. I think that I ordinarily would be entitled to any statements of the codefendant that the state intended to use . . . against my client. The state is now requesting, having shown me for the first time after I rested my own case, to allow— ask the court to allow [it] now to introduce a statement of the codefendant which inculpates my client, which I was not made privy to, and not only until after the state rested its case, [but not] until after I have now rested my own case.

"I think, just on that basis, that it was not disclosed to me [and] that we shouldn't be now subject to having this thrust on us by surprise. Clearly, had we been made privy to this at the appropriate time, it may have been [that] we wouldn't even have called the codefendant to testify. So, it kind of puts us in an awfully precarious position, which the appropriate and legal disclosure hopes to avoid this kind of surprise. So, I think, just based on that, that the rebuttal ought not be allowed.

statement was by a codefendant and should have been provided to the defendant following her request for disclosure, and that the failure to disclose resulted in unfair surprise to the defendant. In response to questioning by the court, the state explained that it did not disclose the statement to the defendant because "[t]he Practice Book doesn't require it [and] [b]y case law, it is allowed to come [into evidence] . . . ." Directly following the state's explanation, the court overruled defense counsel's objection and ruled that the statement was admissible. The court indicated to counsel that it would grant a continuance for counsel to prepare

"The Court: Did the—did he file a motion asking for copies of any statements of the codefendant?

"[The Prosecutor]: Yes, Your Honor. He did.

"The Court: When did you—when did you obtain this statement?

"[The Prosecutor]: July 24 of this year.

"The Court: And have you given him copies of it before?

"[The Prosecutor]: No, Your Honor.

"The Court: Why?

"[The Prosecutor]: The Practice Book doesn't require it. This is not my case-in-chief. I never intended to put Orema Taft on [the witness stand]. It will not change any testimony whatsoever. Had Orema Taft told the truth, that would be something different. This is a statement of a codefendant. By case law, it is allowed to come [into evidence], Your Honor.

"The Court: I'm going to overrule your objection, and I'm going to allow it.

"[Defense Counsel]: I just note for the record, Your Honor, that it is the state that [required] Orema Taft [to be] here today in order to testify. So, I just suggest, for the record, that under the circumstances, given the fact that we are entitled to this information, that we're in essence being sandbagged by it at this point, given the chronology of this disclosure—

"The Court: If you need time to prepare your cross-examination, I will certainly give it to you.

"[Defense Counsel]: Actually, what I think I need, Your Honor, is more time to prepare an objection to this because it's all come just moments ago. I just read this thing for the first time, absent my glasses; that is how much I know about this information. And I think, clearly, it's of such a pivotal nature that I would request [that] the court give us the evening to research this so that we can make appropriate objections. I think it is something that ought not be allowed, and I think it is—it really could—

"The Court: I'm going to allow it. I'm going to allow it, but I'm going to give you an opportunity if you need time to [cross-examine].

"[Defense Counsel]: It's not so much a question of [cross-examining] on it. It is more a question of its admissibility preliminarily.

"The Court: I've ruled on the admissibility."

cross-examination of Rosa. When defense counsel stated that he needed a continuance to prepare his objection to the admissibility of the surprise statement, the court stated, "I've ruled on the admissibility." The testimony Rosa subsequently gave before the jury essentially mirrored that in the offer of proof.

The defendant claims that the state's failure to disclose to her the statement by Taft that inculpated her constituted prosecutorial misconduct. I note, as does the majority, that the state's failure to turn over this statement to the defendant was a clear violation of our rules of practice, specifically Practice Book § 40-11 (a) (6), which requires the state to produce, in a timely fashion, any and all statements made by a codefendant when requested to do so by the defendant.[4] It is undisputed that the defendant made a written request for such information from the state in September, 2002.[5] The state knew of and had in its possession the inculpatory statement made by Taft since July, 2003. Yet, the state failed to provide the statement to the defendant until after she had finished putting on her defense and more than four months after the statement had come into the state's possession. When the state sought to introduce the statement through Rosa, as a rebuttal witness, defense counsel objected because of undue surprise and the resulting prejudice to the defendant. At that point, the prosecutor misstated the law by informing the court that the state was under no obligation to inform the defendant of the statement prior to trial or in response to discovery requests. Immediately following this misstatement, the court overruled the defendant's objection.

[4] See part I of the majority opinion.

[5] The defendant also made an additional request for disclosure of such information in October, 2003, at which time the statement at issue was in the state's possession.

The defendant does not claim that the prosecutor's misrepresentation to the court of its discovery obligations was knowing or wilful or that the misrepresentation, in and of itself, constituted prosecutorial misconduct. The defendant also does not claim that the violation of our rules of practice, in and of itself, constituted prosecutorial misconduct. Rather, the defendant argues that the combination of the state's misrepresentation and previous failure to turn over the statement during the four and one-half months the state had the statement in its possession constituted prosecutorial misconduct and effectively deprived the defendant of her right to prepare and to present a defense.[6]

The majority does not address the effect of the combined nondisclosure and subsequent misstatement of the law and instead reviews the defendant's claim under the abuse of discretion standard generally reserved for discovery violations. In this instance, however, the prosecutor's misstatement of the law, regardless of whether it was a knowing misstatement, effectively prevented the court from imposing sanctions on the state for the nondisclosure and from evaluating the prejudice that may have inured to the defendant because of the state's breach of its duty. Furthermore, because the state never

---

[6] "The federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies." (Internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 624, 622 n.26, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005). "A defendant's right to present a defense is rooted in the compulsory process and confrontation clauses of the sixth amendment and the due process clauses of the fifth and fourteenth amendments. . . . Furthermore, the sixth amendment rights to confrontation and to compulsory process are made applicable to state prosecutions through the due process clause of the fourteenth amendment." (Citation omitted; internal quotation marks omitted.) Id., 622 n.26.

corrected the misstatement of law for the court, the defendant never had the opportunity for the court to consider whether different steps should have been taken to protect and to ensure her rights. This is a markedly different scenario from that found in *State* v. *Respass*, 256 Conn. 164, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001), in which the trial court's sanctions for the state's failure to comply with a discovery order were upheld. In rejecting the *Respass* defendant's challenge on appeal, our Supreme Court noted: "In determining what sanction is appropriate for failure to comply with court ordered discovery, the trial court should consider the reason why disclosure was not made, the extent of prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." Id., 186. Here, once the state incorrectly advised the court that there had not been a violation of the rule of practice, the court did not address those factors.[7] Having failed to make the requisite disclosure, the state, at the very least, had an obligation to the defendant and to the court to ensure that the lack of disclosure was evaluated under a proper formulation of the law. In this case, the state failed on all accounts.[8]

---

[7] The record indicates that the court relied on the state's representation that there had not been a violation of the rule of practice. If there was not a discovery violation, then it is axiomatic that the court would not consider what sanctions would be appropriate for the nonexistent violation.

[8] I do not mean to suggest that the prosecutor, in misstating the law to the court, violated our Rules of Professional Conduct. A violation of rule 3.3 of the Rules of Professional Conduct requires a *knowing misrepresentation*, and violations of our Rules of Professional Conduct constitute prosecutorial misconduct per se. See, e.g., *State* v. *Dews*, 87 Conn. App. 63, 76–77, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005). I do not profess to know whether the misstatement in this instance was deliberate or unknowing, and I give to the state the benefit of the doubt. The mere fact that the prosecutor did not violate rule 3.3, however, does not transform improper conduct into proper conduct, a conclusion further reinforced by our Supreme Court in *State* v. *Ceballos*, 266 Conn. 364, 832 A.2d 14 (2003). In *Ceballos*, the court acknowledged that "the lack of bad faith on the part

Having concluded that the prosecutor engaged in misconduct, I now apply the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), as instructed by our Supreme Court in *State* v. *Stevenson*, 269 Conn. 563, 575, 849 A.2d 626 (2004). The effect of Rosa's testimony was to impeach Taft's credibility.[9] The state had impeached Taft's credibility with the jury during its cross-examination of him, when it brought to the forefront the difficulties Taft faced when trying to enter his guilty plea. This cross-examination of Taft presented to the jury a witness who previously had been caught lying to the court; any testimony he offered to the jury, therefore, was going to be met with caution, if not with disbelief.

Furthermore, any use of the statement as substantive proof by the jury would have been cumulative of that evidence with which the jury already had been presented. The jury heard, in the first instance, the testimony of Robert Gagstetter, the victim, who testified that he recognized the defendant—her build, those portions of her face that he could see through her mask and, most importantly, her voice. He also identified certain property of his, which the police discovered in the defendant's house, that he claimed had been stolen during the robbery. Additionally, the jury knew that the defendant had written a note, ostensibly to be given to

---

of the state's attorney in [engaging in improper conduct] is irrelevant to the determination of whether [such conduct was] improper." Id., 382. Furthermore, as is the case with discovery sanctions, the ultimate question in cases of alleged prosecutorial misconduct is not the culpability of the prosecutor, but rather the ultimate fairness of the trial and the protection afforded a defendant's rights. *State* v. *Singh*, 259 Conn. 693, 701, 793 A.2d 226 (2002); see *State* v. *Respass*, supra, 256 Conn. 186.

[9] I find unpersuasive the state's claim that the defendant suffered no prejudice because the state could have offered Taft as a witness in its case-in-chief. Not only is such a claim at distinct odds with the representations offered by the state at trial—that it had no intention of calling Taft as a witness; see footnote 3; it also is irrelevant to whether the defendant suffered harm because of the state's failure to disclose Taft's statement.

Taft, which directed Taft, in entering his guilty plea, to refrain from admitting her involvement. This evidence, all presented by the state in its case-in-chief, was more than sufficient for the jury to conclude beyond a reasonable doubt that the defendant had been involved in the robbery. Taft's statement, introduced in rebuttal, added little to nothing of substance to the state's case. I therefore conclude that although the prosecutor engaged in misconduct by first withholding Taft's statement from the defendant and then misstating to the court the duty the state had to disclose that statement, that misconduct did not deny the defendant her constitutional right to a fair trial.

For the foregoing reasons, I concur in the judgment.